IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DEBORAH MOSHOLDER**,  )
                         )
    Plaintiff,       )
                         )
v.                       )  2:13cv503
                         )  **Electronic Filing**
**CAROLYN W. COLVIN, ACTING**  )
**COMMISSIONER OF SOCIAL**     )
**SECURITY**,            )
                         )
    Defendant.       )

**MEMORANDUM OPINION**

August 20, 2014

## I. INTRODUCTION

Plaintiff Deborah Ann Mosholder ("Mosholder") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The record has been developed at the administrative level, and the parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons that follow, the Commissioner's motion for summary judgment (**Document No. 13**) will be denied, and Mosholder's motion for summary judgment (**Document No. 11**) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

1

the Commissioner's decision, and a remand for further administrative proceedings. The decision of the Commissioner will be vacated, and the case will be remanded for further consideration of Mosholder's application for SSI benefits.

## II.　PROCEDURAL HISTORY

Mosholder initially applied for disability insurance benefits and SSI benefits under Titles II and XVI of the Act in March 2005. R. at 62. The claims were ultimately denied on November 29, 2007. R. at 62. Mosholder apparently took no further action with respect to those applications. R. at 62. She reapplied for disability insurance benefits and SSI benefits on February 26, 2008. R. at 10. Administrative Law Judge James Bukes rejected the applications in a decision rendered on February 5, 2010. R. at 62-71.

Mosholder protectively applied for SSI benefits on July 12, 2010, alleging the existence of a disability beginning on February 6, 2010. R. at 10, 30, 149, 159. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on November 16, 2010. R. at 88. Mosholder responded on January 20, 2011, by filing a request for an administrative hearing. R. at 93-95. On December 8, 2011, a hearing was held in Mars, Pennsylvania, before Administrative Law Judge ("ALJ") Joanna Papazekos. R. at 10, 27. Mosholder, who was assisted by a non-attorney representative,[2] appeared and testified at the hearing. R. at 32-52. Patricia J. Murphy ("Murphy"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 53-57. In a decision dated December 29, 2011, the ALJ determined that Mosholder was not "disabled" within the meaning of the Act. R. at 10-22.

---

[2] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

On February 6, 2012, Mosholder sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 5-6. The Appeals Council denied the request for review on February 14, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Mosholder commenced this action on April 8, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Mosholder and the Commissioner respectively filed motions for summary judgment on August 21, 2013, and September 23, 2013. ECF Nos. 11 & 13. Those motions are now ripe for adjudication.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.     THE ALJ'S DECISION**

In his decision, the ALJ determined that Mosholder had not engaged in substantial gainful activity subsequent to her application date. R. at 12. Mosholder was found to be suffering from diabetes mellitus, tremors, asthma, degenerative disc disease, obesity, major depressive disorder, intermittent explosive disorder, and a panic disorder with agoraphobia. R. at 12. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 12; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Mosholder's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-15.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Mosholder's "residual functional capacity"[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except limited to only occasional stooping, crouching, crawling, kneeling, balancing, and climbing. She can perform simple, routine, and repetitive work with one to two step instructions. She may have occasional contact with supervisors, but no work with the public or work requiring close coordination with others. The claimant is limited to a stable work environment where the work process and work place remain relatively the same. She requires

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

> no paced work or quotas, and occupations that require decision-making only within fixed parameters.

R. at 15. Mosholder had "past relevant work"[4] experience as a sterilizer, fast food worker and housekeeper. R. at 53-54, 165. Murphy classified the fast food worker and housekeeper positions as "unskilled"[5] jobs at the "light"[6] level of exertion. R. at 53-54. She testified that the Dictionary of Occupational Titles ("DOT") described the sterilizer position as a "semi-skilled"[7] job at the "light" exertional level. R. at 53-54. Mosholder testified that, as a sterilizer, she had been expected to lift objects weighing up to fifty pounds. R. at 36. Given that testimony,

---

[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

7

Murphy stated that Mosholder had actually performed her duties at the "medium"[8] level of exertion. R. at 53-54. In response to a question describing a hypothetical individual falling within the parameters of the ALJ's residual functional capacity assessment, Murphy asserted that the described individual could work as a housekeeper. R. at 54. Assuming that a housekeeper may be required to adapt to changes in the work setting, the ALJ nevertheless concluded that Mosholder could not return to her past relevant work. R. at 20.

Mosholder was born on October 23, 1973, making her thirty-six years old on her application date and thirty-eight years old on the date of the ALJ's decision. R. at 32. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). Mosholder had a high school education and an ability to communicate in English. R. at 34, 164; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Mosholder could work as a marker, a power screw driver, or an assembler of electrical accessories. R. at 21. Murphy's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[9] R. at 55.

## V. THE EVIDENTIARY RECORD

Mosholder was born in Ohio. R. at 302. She was the second of five children. R. at 302. When she was five years old, her family relocated to Pittsburgh, Pennsylvania. R. at 302. At some point during Mosholder's time as an elementary school student, it was determined that she

---

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

8

had a learning disability. R. at 302. During her teenage years, Mosholder was provided with medication for depression. R. at 302. As a high school student, she had a part-time job at a local Long John Silver's restaurant. R. at 36, 165, 183. Mosholder graduated from high school in 1992. R. at 34, 164.

After completing high school, Mosholder started to work as a housekeeper for an Embassy Suites Hotel. R. at 165, 183. In 1993, she was involved in a motor vehicle accident. R. at 328. The accident caused her to suffer pain in her back. R. at 328. Mosholder later became involved with a boyfriend who gave her illegal drugs. R. at 302. When Mosholder was twenty years old, her boyfriend committed suicide in her presence.[10] R. at 265, 302. The trauma resulting from that event led Mosholder to use crack cocaine in order to mask her emotional pain. R. at 302. In 1995, Mosholder threatened to shoot herself. R. at 265. Her cousin intervened and prevented the suicide. R. at 265. Mosholder was later hospitalized at St. Francis Hospital for inpatient psychiatric treatment. R. at 265.

On July 3, 1995, Mosholder started a new job at Sewickley Valley Hospital ("SVH"). R. at 183. She worked as a central service technician. R. at 183. In that capacity, she cleaned and sterilized medical instruments. R. at 35. Mosholder performed most of her duties while standing. R. at 35. She was sometimes required to lift objects weighing up to fifty pounds. R. at 36. The DOT classified Mosholder's job as a "semi-skilled" sterilizer position. R. at 53-54. Although it was listed in the DOT as a "light" job, Murphy testified that Mosholder had actually performed her duties at the "medium" level of exertion. R. at 53-54.

Mosholder continued to work at SVH until August 23, 2004, when she suffered a "nervous breakdown." R. at 265-266. The "breakdown" apparently involved threats made

---

[10] The documentary record suggests that two of Mosholder's cousins also committed suicide. R. at 265. It is not clear when those suicides occurred.

against Mosholder's co-workers. R. at 328. Mosholder committed herself to the University of Pittsburgh Medical Center's facility in Beaver County, Pennsylvania ("UPMC Beaver"). R. at 265, 302. After her discharge from UPMC Beaver, Mosholder did not return to work.[11] R. at 164.

In the aftermath of her hospitalization, Mosholder sought outpatient psychiatric treatment at the Staunton Clinic in Sewickley, Pennsylvania. R. at 265. Dr. Apolonia Sinu, a psychiatrist affiliated with the Staunton Clinic, started to treat Mosholder on November 28, 2005. R. at 413. After her initial visit with Dr. Sinu, Mosholder continued to attend therapy sessions every two to three weeks. R. at 413. She was given prescriptions for Depakote, Lexapro, Abilify and Ambien. R. at 413. Her medications were checked every two to three months. R. at 413.

On May 9, 2008, Dr. T. David Newman performed a consultative psychological evaluation of Mosholder in connection with her earlier applications for benefits. R. at 265-270. Mosholder was found to be suffering from unspecified mood and personality disorders. R. at 267. After completing the evaluation, Dr. Newman reported that Mosholder had "moderate" to "marked" limitations in her abilities to respond appropriately to work pressures in a usual work setting and interact appropriately with co-workers and members of the general public. R. at 268. He indicated that she had "moderate" limitations in her abilities to understand, remember and carry out instructions.[12] R. at 268. Mosholder's abilities to make simple work-related decisions, respond appropriately to changes in a routine work setting and interact appropriately with supervisors were deemed to be unlimited. R. at 268.

---

[11] Mosholder's conduct in the workplace apparently resulted in the termination of her employment with SVH. R. at 329.
[12] Those perceived limitations applied to both short, simple instructions and detailed instructions. R. at 268.

Judge Bukes denied Mosholder's applications for benefits on February 5, 2010. R. at 62-71. On July 12, 2010, Mosholder protectively reapplied for SSI benefits. R. at 149, 159. Dr. Sharna Olfman performed a consultative psychological evaluation of Mosholder on September 25, 2010. R. at 302-307. In her examination report, Dr. Olfman stated as follows:

> Ms. Mosholder was once a depressed youth with a quick temper who is now a morbidly obese woman in her 30s with multiple side effects from her heavy use of neuroleptic medications including asthma, high cholesterol, diabetes and symptoms of Parkinson's. I am concerned about the high number of iatrogenic illnesses she now suffers from and believe that a review and gradual tapering down of her psychiatric medication needs to be considered. She sustained a significant trauma as a young adult when she witnessed her boyfriend's suicide and I believe that her history of trauma has not been adequately addressed in her treatment. Ms. Mosholder was once a young woman with interests and aspirations, and she is today in her mid 30s a very sick woman who is profoundly depressed and lacking in hope. Intensive psychotherapeutic intervention and a review of her medication and possible drug interactions is called for.

R. at 304. Dr. Olfman opined that Mosholder had "extreme" limitations in her abilities to understand, remember and carry out detailed instructions, make simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. at 306. Mosholder's abilities to understand, remember and carry out short, simple instructions were found to be "moderately" limited. R. at 306. Murphy testified that no jobs existed in the national economy for an individual who was completely unable to interact with others or adapt to changes in the workplace. R. at 55-56.

Dr. Daniel G. Christo performed a consultative physical examination of Mosholder on October 28, 2010. R. at 328-336. Mosholder complained of pain in her knees and lower back. R. at 328, 331. It was noted that she was suffering from tremors. R. at 331. Dr. Christo opined that the tremors did not affect Mosholder's "gross motor or fine motor functions." R. at 331.

11

Based on the findings of his examination, Dr. Christo asserted that Mosholder could frequently lift or carry objects weighing up to twenty-five pounds. R. at 335. He further reported that she was restricted to only occasional postural maneuvers, and that she needed to limit her exposure to temperature extremes, dusts, fumes, odors, gases, and environments with poor ventilation. R. at 334. Mosholder's sitting, standing, walking, pushing, pulling, reaching, handling and fingering abilities were deemed to be unlimited. R. at 334-335.

Dr. Arlene Rattan, a nonexamining psychological consultant, opined on October 19, 2010, that Mosholder was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." R. at 313. Discussing Mosholder's functional abilities and limitations in detail, Dr. Rattan made the following observations:

> The claimant's ability to understand and remember complex or detailed instructions is limited, [sic] however, she would be expected to understand and remember simple one and two-step instructions. She can perform simple, routine, repetitive work in a stable environment. She can make simple decisions. She can sustain an ordinary routine without special supervision. Moreover, she evidences some limitation in dealing with work stresses and public contact. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

R. at 312. Dr. Rattan described Dr. Olfman's examination report as "an overestimate of the severity of [Mosholder's] functional restrictions." R. at 312.

Dana Rankin ("Rankin"), an adjudicator working on behalf of the Bureau, determined on November 9, 2010, that Mosholder was physically capable of performing an unrestricted range of "light" work. R. at 76-82. The Bureau denied Mosholder's application for SSI benefits one week later. R. at 88. Under the Commissioner's regulations, Rankin's administrative findings of

fact did not constitute evidence of Mosholder's ability to work. 20 C.F.R. § 416.927(e)(1)(i). The ALJ correctly declined to consider those findings as "opinion evidence." R. at 18, n. 2.

Toni Cillo ("Cillo"), a step cousin of Mosholder, prepared a handwritten statement in support of Mosholder's application for SSI benefits. R. at 199. In her statement, which was dated April 5, 2011, Cillo described Mosholder's tremors and asserted that she could not sit or stand for long periods of time. R. at 199. In a similar statement dated April 28, 2011, Charlene Cunzolo ("Cunzolo"), Mosholder's friend, discussed Mosholder's tremors and "dizzy spells." R. at 211-212. Cunzolo explained that "shaking and dizzy spells" had prevented Mosholder from driving a car during the previous four years. R. at 211.

Dr. Sinu detailed Mosholder's alleged functional limitations on a "mental residual functional capacity questionnaire" form. R. at 413-416. On the form, Dr. Sinu indicated that Mosholder was either "[u]nable to meet competitive standards" or completely unable to function in each work-related area. R. at 415-416. Dr. Sinu predicted that Mosholder would need to miss more than four days of work per month if she were to be employed on a full-time basis. R. at 416. The form completed by Dr. Sinu appears in the administrative record as Exhibit No. C14F. R. at 413-416. The "court transcript index" indicates that the form was completed on May 24, 2011. ECF No. 7-1 at 2. Although Dr. Sinu's assessment was clearly prepared on the twenty-fourth day of May, the year appearing on the form is illegible. R. at 416. In her decision, the ALJ observed that the date of Dr. Sinu's report was "questionable." R. at 19. The Court notes that Judge Bukes discussed a similar "checklist form" completed by Dr. Sinu in his decision of February 5, 2010. R. at 69. It is not clear whether Dr. Sinu completed two separate forms, or whether the form referenced in Judge Bukes' decision was the same form appearing in the record of this case as Exhibit No. C14F.

In July 2011, Mosholder reinjured her back while lifting an air-conditioning unit out of a window. R. at 542. She quickly began to experience numbness in her legs and buttocks. R. at 542. The injury made it difficult for Mosholder to sit, stand or walk for more than fifteen minutes at a time. R. at 542. A magnetic resonance imaging ("MRI") scan revealed that Mosholder had a herniated disc in her back. R. at 539, 546. Dr. Ashvin T. Ragoowansi surgically repaired Mosholder's back on August 18, 2011. R. at 473. The procedure was performed at a facility operated by the Heritage Valley Health System. R. at 473. On August 24, 2011, Mosholder was discharged in "satisfactory condition." R. at 473. Her sutures were removed on September 1, 2011. R. at 451. Although Mosholder continued to experience "some mild numbness," she was nevertheless "doing well with good resolution of her preoperative leg pain." R. at 451. Three weeks later, however, Mosholder complained of "occasional shooting pains" in her left leg. R. at 450.

At the hearing, Mosholder testified that her dizziness had rendered her unable to drive a motor vehicle. R. at 34. She stated that her tremors frequently made it difficult for her to grasp objects, cut food, carry drinks, dial telephone numbers, use hand-held tools, and prepare handwritten messages. R. at 37-43. The transcript suggests that Mosholder periodically cried throughout the hearing. R. at 45-48. She responded in the affirmative when asked whether she was "scared." R. at 48. Mosholder asserted that she did not like to be around large numbers of people. R. at 49. She also informed the ALJ that another operation on her back would be needed if her condition did not improve. R. at 50.

## VI. DISCUSSION

In determining Mosholder's residual functional capacity, the ALJ relied primarily upon the assessments supplied by Dr. Christo and Dr. Rattan. R. at 18-19. The ALJ rejected the opinions expressed by Dr. Olfman and Dr. Sinu. R. at 19. Since Dr. Newman's examination report was prepared more than two years before Mosholder's protective filing date, the ALJ determined that it was not relevant to the inquiry. R. at 19, n. 3.

Mosholder does not challenge the factual findings pertaining to her physical abilities and limitations. ECF No. 12 at 6. She simply argues that the ALJ erred in crediting the assessment provided by Dr. Rattan over those provided by Dr. Olfman and Dr. Sinu. ECF No. 12 at 6-12. Given the limited scope of Mosholder's argument, the dispositive inquiry is relatively narrow.

Opinions expressed by treating and examining physicians do not inevitably bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When conflicting medical assessments are presented, an administrative law judge is usually "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). An assessment prepared by a nonexamining consultant will not normally constitute "substantial evidence" of a claimant's ability to work when it is contradicted by reports submitted by treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is especially true in cases involving claimants afflicted with mental impairments. A mental health professional cannot normally "formulate medical opinions based upon objective findings derived

15

from clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Haisley v. Sedgwick Claims Management Services, Inc.*, 776 F.Supp.2d 33, 50 (W.D.Pa. 2011). Since Dr. Rattan never examined Mosholder, her assessment did not provide the ALJ with an adequate evidentiary basis for rejecting the opinions of disability expressed by Dr. Olfman and Dr. Sinu. *Morales*, 225 F.3d at 317.

For the foregoing reasons, the ALJ's decision must be set aside. The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). If it were clear that the reports prepared by Dr. Olfman and Dr. Sinu were both relevant to the period of time in question, an award of benefits would be justified. *Morales*, 225 F.3d at 320. Because the timeliness of Dr. Sinu's report is uncertain, however, the proper remedy in this case is a remand for further consideration of Mosholder's application for SSI benefits.

As discussed earlier, the year of Dr. Sinu's assessment is illegible. R. at 416. In her brief, the Commissioner points out that Judge Bukes appears to have discussed that assessment in his February 5, 2010, decision denying Mosholder's earlier applications for benefits. ECF No.

14 at 12, n. 4; R. at 69. In the decision presently under review, the ALJ noted that the date of Dr. Sinu's report was "questionable." R. at 19. In determining Mosholder's residual functional capacity, the ALJ did not rely on Dr. Newman's examination report. R. at 19, n. 3. Nevertheless, the ALJ's residual functional capacity finding was largely consistent with the views expressed by Dr. Newman. R. at 15, 268. If Dr. Sinu's assessment was outdated, it may have been no more probative of Mosholder's condition during the relevant period of time than was Dr. Newman's contrary assessment.[13] As the patient receiving treatment from Dr. Sinu, Mosholder was the party in the best position to clarify the timing of Dr. Sinu's opinion.[14] *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The Court will not base a judicially-ordered award of benefits on evidence that may prove to be outdated. Consequently, the case will be remanded for further proceedings.

## VII. CONCLUSION

The Commissioner's motion for summary judgment (**Document No. 13**) will be denied, and Mosholder's motion for summary judgment (**Document No. 11**) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings. The Commissioner's decision denying Mosholder's application for SSI benefits will be vacated, and the case will be remanded for further consideration of that application. No opinion is expressed as to whether benefits should ultimately be awarded in this case. In any event, the Commissioner

---

[13] Evidence may relate to a given period of time even if it is prepared before or after that period. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1382 (Fed.Cir. 2009). If an earlier report from Dr. Sinu is deemed to be relevant, however, the same may be true of the contrary report prepared by Dr. Newman.

[14] To some extent, the proper remedy turns on whether delays are attributable to the conduct of the claimant or the Commissioner. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

must "reopen and fully develop the record" before determining whether Mosholder is "disabled." *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). The issues on remand are not necessarily limited to those raised by Mosholder at this stage and addressed in this decision. Although the ALJ found Mosholder's asthma to be a "severe" impairment, her residual functional capacity finding did not incorporate the environmental restrictions described in Dr. Christo's examination report. R. at 12, 15, 334. As the Commissioner reconsiders Mosholder's application for benefits, she must carefully evaluate the "combined impact" of all relevant impairments. 42 U.S.C. § 1382c(a)(3)(G). An appropriate order will follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Robert W. Gillikin , II, Esquire  
Christy Wiegand  
Assistant United States Attorney

(*Via CM/ECF Electronic Mail*)